No: 23-1507/No. 23-1551

_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

JASON SCHWEBKE,

*Plaintiff-Appellee,*

v.

UNITED WHOLESALE MORTGAGE, D/B/A UWM,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 21-cv-10154
Hon. Denise Page Hood

_____

**APPELLEE'S BRIEF
Oral Argument Requested**

Deborah L. Gordon
Elizabeth Marzotto Taylor
Sarah Gordon Thomas
Molly Savage
DEBORAH GORDON LAW
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, MI 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com
*Attorneys for Plaintiff-Appellee*

Dated: October 13, 2023

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ................................... x

JURISDICTIONAL STATEMENT .................................................................... xi

STATEMENT OF ISSUES FOR REVIEW ...................................................... xii

INTRODUCTION/SUMMARY OF THE ARGUMENT ................................ 1

STATEMENT OF THE CASE ............................................................................ 2

    I.    UWM failed to accommodate Schwebke's disability and wrongfully
        terminated him ............................................................................... 2

    II.   Completely inconsistent with an intent to arbitrate, UWM litigates
        Schwebke's claims through the close of discovery ............................ 3

    III.  UWM moves to compel arbitration then moves to extend the
        dispositive motion cutoff ............................................................... 7

STANDARD OF REVIEW ................................................................................. 10

ARGUMENT ...................................................................................................... 10

    I.    *Morgan* eliminated the prejudice prong; the remainder of this
        Circuit's test for waiver is unchanged ........................................... 10

    II.   UWM waived its right to arbitrate by taking action which was
        completely inconsistent with an intent to arbitrate .......................... 15

        a.    Length of delay ...................................................... 16

        b.    Extensive participation in discovery ....................... 19

        c.    Failure to raise arbitration as a defense or in representations
             to the district court ................................................ 24

        d.    Discovery not available in arbitration ..................... 25

      e.    Bad faith, lack of credible excuse for delay, and laxness ................. 28

III.    UWM proposed bright line test for inferring waiver of the right to arbitrate are unduly narrow ........................................................................... 31

CONCLUSION ................................................................................................................ 36

ADDENDUM .................................................................................................................... 38

# TABLE OF AUTHORITIES

*Aqualucid Consultants, Inc. v. Zeta Corp.,*
  721 F.App'x. 414 (6th Cir. 2017) ................................................................... 18

*Blessing v. Chandrasekhar,*
  988 F.3d 889 (6th Cir. 2021) ....................................................................... 33

*Borror Prop. Mgmt., LLC v. Oro Karric North, LLC,*
979 F.3d 491 (6th Cir. 2020) ....................................................................... 10

*Boustead Securities, LLC,*
  2023 WL 2481109 (S.D.N.Y. Feb. 14, 2023) ............................................. 33

*Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.,*
  436 F.2d 405 (5th Cir. 1971) ....................................................................... 32

*But c.f. St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.,*
  969 F.2d 585 (7th Cir. 1992) ....................................................................... 10

*Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,*
  50 F.3d 388, 391 (7th Cir. 1995) ................................................................ 30

*Chrysler Fin. Servs. v. Henderson,*
2011 WL 6927638 (Ohio Ct. App. Dec. 23, 2011) .................................... 17

*Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.,*
  2018 WL 5045760 (E.D.N.Y. Oct. 17, 2018) ............................................. 17

*Cordrey v. Euckert,*
  917 F.2d 1460 (6th Cir. 1990) ..................................................................... 10

*CVS Health Corp. v. Vividus, LLC,*
  878 F.3d 703 (9th Cir. 2017) ....................................................................... 26

*Day v. Spectrum Health Med. Grp.,*
  2020 WL 13682747 (W.D. Mich. Aug. 11, 2020) ...................................... 32

*Debois, Inc. v. Guy,*
  161 N.E.3d 99 (Ohio Ct. App. 2020) .......................................................... 17

*Dodson Int'l Parts, Inc. v. Williams Int'l Co.,*
 2019 WL 5680811 (E.D. Mich. June 26, 2019) ............................................... 26

*Doe v. Trump Corp.,*
 453 F.Supp.3d 634 (S.D.N.Y. 2020) ............................................................... 16

*DWS Int'l, Inc. v. Arts,*
 2010 WL 11489126 (S.D. Ohio June 21, 2010) ............................................... 21

*Eagle Traffic Control, Inc. v. James Julian, Inc.,*
 945 F.Supp. 834 (E.D. Pa. 1996) ................................................................... 17

*Gen. Star Nat. Ins. Co.,*
 289 F.3d 434 ................................................................................................. 28

*Germany v. River Terminal Ry. Co.,*
 477 F.2d 546 (6th Cir. 1973) ......................................................................... 21

*Glazer v. Lehman Bros., Inc.,*
 394 F.3d 444 (6th Cir. 2005) ......................................................................... 13

*Granite Rock Co. v. Teamsters,*
 561 U.S. 287 (2010) ....................................................................................... 12

*Gray Holdco, Inc. v. Cassady,*
 654 F.3d 444 (3d Cir. 2011) ........................................................................... 31

*Gunn v. NPC Int'l., Inc.,*
 625 F.App'x. 261 (6th Cir. 2015) ................................................................... 28

*Gutierrez v. Wells Fargo Bank, NA,*
 889 F.3d 1230 (11th Cir. 2018) ..................................................................... 18

*Hay Grp., Inc. v. E.B.S. Acquisition Corp.,*
 360 F.3d 404 (3d Cir. 2004) ........................................................................... 26

*Hayse v. City of Melvindale,*
 2018 WL 11176493 (E.D. Mich. Apr. 10, 2018) ............................................. 20

*Hurley v. Deutsche Bank Trust Co. Americas,*
 610 F.3d 334 (6th Cir. 2010) ......................................................................... 21

*In re Cox Ent., Inc. Set-top Cable Tele. Box Antitrust Lit.,*
   790 F.3d 1112 (3d Cir. 2015).................................................................... 20

*In re Generali COVID-19 Travel Ins. Lit.,*
   577 F.Supp.3d 284 (S.D.N.Y. 2021) ........................................................ 33

*In re Polyurethane Foam Antitrust Lit.,*
   998 F.Supp.2d 625 (N.D. Ohio Feb. 25, 2014) ........................................ 18

*In re Sec. Life Ins. Co. of Am.,*
   228 F.3d 865 (8th Cir. 2000) .................................................................... 27

*Johnson Assocs. Corp. C. HL Operating Corp.,*
   680 F.3d 713 (6th Cir. 2012) .................................................................... 10

*JPD, Inc. v. Chronimed Holdings, Inc.,*
   539 F.3d 388 (6th Cir. 2008) .................................................................... 31

*Kelleher v. Dream Catcher, L.L.C.,*
   263 F.Supp.3d 253 (D.D.C. 2017) ........................................................... 16

*Khan v. Parsons Global Servs. Ltd.,*
   521 F.3d 421 (D.D.C. 2008) ..................................................................... 20

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,*
   67 F.3d 20 (2d Cir. 1995) ......................................................................... 16

*Lease Grp. Res., Inc. v. Detroit Pub. Sch. Dist.,*
   2009 WL 1010921 (E.D. Mich. Apr. 14, 2009) ........................................ 32

*LeBlanc v. Halliburton Co.,*
   414 F.Supp.3d 1360 (D.N.M. 2019) ......................................................... 20

*Life Receivables Tr. v. Syndicate 102 at Lloyd's of London,*
   549 F.3d 210 (2d Cir. 2008) ..................................................................... 25

*Linglong Americas, Inc. v. Tire,*
   2016 WL 2610264 (N.D. Ohio May 6, 2016) ........................................... 13

*Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
626 F.3d 156 (2d Cir. 2010) ............................................................ 32

*Mantaline Corp. v. PPG Indus., Inc.*,
225 F.3d 659 (6th Cir. 2000) ........................................................... 18

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ......................................................... 15

*Miller Brewing Co. v. Fort Worth Distrib., Co., Inc.*,
781 F.2d 494 (5th Cir. 1986) ........................................................... 16

*Nat'l Found. For Cancer Research v. A.G. Edwards & Sons, Inc.*,
821 F.2d 772 (D.C. Cir. 1987) .......................................................... 15

*Newburgh/Six Mile Ltd. Partnersip II v. Adlabs Films USA, Inc.*,
483 F.App'x. 85 (6th Cir. 2012) ....................................................... 25

*O.J. Distrib., Inc. v. Hornell Brewing Co.*,
349 F.3d 345 (6th Cir. 2003) ........................................................... 11

*Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*,
380 F.3d 200 (4th Cir. 2004) ........................................................... 22

*Pittman ex rel. Sykes v. Franklin*,
282 F.App'x. 418 (6th Cir. 2008) ..................................................... 25

*Rugumbwa v. Betten Motor Sales*,
136 F.Supp.2d 729 (W.D. Mich. 2001) ............................................ 19

*S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*,
906 F.2d 1507 (11th Cir. 1990) ........................................................ 16

*S. Sys., Inc. v. Torrid Oven Ltd.*,
105 F.Supp.2d 848 (W.D. Tenn. July 25, 2000) ................................ 15

*Sampson v. GJ Gentry Gen. Engineering, Inc.*,
2023 WL 6139562 (Cal. Ct. App. Sept. 20, 2023) ............................. 32

*Sandler v. All Acquisition Corp., Inc.*,
954 F.2d 382 (6th Cir. 1992) ........................................................... 10

*Shy v. Navistar Intern. Corp*,
  781 F.3d 820 (6th Cir. 2015) ................................................................ 11

*Smith v. Allstate Power Vac., Inc.*,
  482 F.Supp.3d 40 (E.D.N.Y. 2020) ...................................................... 16

*Steese v. Canton Regency*,
  204 N.E.3d 700 (Ohio Ct. App. 2022) ................................................. 17

*Stifel, Nicolaus & Co. Inc. v. Freeman*,
  924 F.2d 157, 159 (8th Cir. 1991) ....................................................... 28

*Stratton v. Portfolio Recovery Assocs., LLC*,
  2015 WL 667551 (E.D. Ky. Nov. 2, 2015) ........................................... 28

*Stutler v. TK Constructors, Inc.*,
  448 F.3d 343 (6th Cir. 2006) ............................................................... 27

*U.S. Army Officer Candidate Sch. Alumni Assoc., Inc. v. Southern States Bank*,
  2018 WL 9371678 (M.D. Ga. May 21, 2018) ....................................... 17

*U.S. ex rel Dorsa v. Miraca Life Sciences, Inc.*,
  33 F.4th 352 (6th Cir. 2022) ............................................................... 12

*Uwaydah v. Van Wert Cty. Hosp.*,
  246 F.Supp.2d 808 (N.D. Ohio 2002) ................................................. 25

*Vining v. Logan Clutch Corp.*,
  2020 WL 948777 (Ohio Ct. App. Feb. 27, 2020) ................................. 17

*Warrington v. Rocky Patel Premium Cigars, Inc.*,
  2023 WL 1818920 (11th Cir. Feb. 8, 2023) ......................................... 31

*Waters v. Pizza to You, LLC*,
  2021 WL 5416536 at *4 (S.D. Ohio Nov. 18, 2021) ............................. 20

*Westlake Vinyls, Inc. v. Resolute Mgmt, Inc.*,
  2018 WL 4515997 (W.D. Ky. Aug. 21, 2018) ...................................... 26

*White v. Samsung Elecs. Am. Inc.*,
   61 F.4th 334 (3d. Cir. 2023) ........................................................................ 25

*Wilson Sporting Goods Co. v. Penn Partners*,
   2004 WL 2033063 (N.D. Ill. Aug. 21, 2004) ............................................... 17

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellee Jason Schwebke ("Plaintiff") requests oral argument to address any questions the Court may have after reviewing the briefs and the record, and to respond to any arguments raised by Defendant-Appellant ("Defendant") in its reply brief. Given that this appeal follows the Supreme Court's recent decision in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), which abrogated components of this Court's caselaw regarding waiver of the right to arbitrate, Plaintiff believes oral argument could assist the Court in rendering its decision the issues raised in this matter.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellee agrees with the Defendant-Appellant's Jurisdictional Statement.

## STATEMENT OF ISSUES FOR REVIEW

I.   Did UWM take action that was completely inconsistent with an intent to arbitrate by failing to raise arbitration as an affirmative defense in its Answer, stating in its Rule 26(f) report that the case should be tried by a jury, engaging in extensive discovery including propounding requests for documents, issuing 15 non-party subpoenas, participating in eight lengthy depositions, two of which were noticed by UWM, producing over 80,000 pages of documents, filing a witness list with the district court and delaying over eight months—until after the close of discovery—before raising arbitration for the first time in its Motion to Compel?

Defendant-Appellant answers: No.

Plaintiff-Appellee answer: Yes.

The District Court answered: Yes.

## INTRODUCTION/SUMMARY OF THE ARGUMENT

Plaintiff Jason Schwebke filed suit against Defendant UWM on January 22, 2021. For the next eight months, UWM was content in litigating Schwebke's claims in federal court. UWM utilized liberal discovery rules to engage in extensive document production, took lengthy depositions, and voluntarily extended the parties' discovery cut off to take more depositions. After a late flurry of unfavorable deposition testimony, UWM changed strategy. At the eleventh hour, it filed a motion to dismiss and compel arbitration, feigning ignorance of a document that's been in its possession since 2019 and which it produced in discovery six months prior.

UWM has waived its right to arbitrate by 1) delaying over eight months to invoke the agreement; 2) engaging in extensive discovery; 3) failing to raise arbitration as an affirmative defense; 4) utilizing discovery methods not available in arbitration; and 5) failing to set forth any plausible reason why their motion should be considered anything other than forum shopping. UWM's attempts to minimize the extent of its participation in this litigation are belied by the record. The company's actions were completely inconsistent with any intention to arbitrate Schwebke's claims.

## STATEMENT OF THE CASE

I.    **UWM failed to accommodate Schwebke's disability and wrongfully terminated him**

Plaintiff Jason Schwebke has been totally deaf and unable to speak since birth. He is a native American Sign Language ("ASL") user. Complaint, R. 1 at PageID. 2-3. Despite the hardships that accompany his disability, Schwebke has built a successful career as a software developer. In September 2019, he left his position at Quicken Loans for what he believed would be a better opportunity at UWM, the largest wholesale mortgage lender in the United States, which totes billion-dollar profits year after year. *Id.* at PageID.3. On September 25, 2019, Schwebke and UWM entered into an Employment Agreement containing an arbitration provision, effective as of September 30, 2019. Empl. Agr., R. 20-26 at PageID.632-33.

At the time of his hire, Schwebke requested the use of a sign-language interpreter for team meetings. Compl., R. 1 at PageID.3. Schwebke and his physician filled out company paperwork requesting an accommodation in the form of a "sign language interpreter." *Id.* Throughout his employment, UWM denied Schwebke's repeated requests for a sign language interpreter and instead requested that Schwebke use "low-cost" alternatives to facilitate communication in meetings. *Id.* at 4-5.

Schwebke repeatedly reported to his supervisors and members of UWM's Benefits team that the "low-cost" modalities were ineffective, and he felt he needed a sign language interpreter to communicate with his co-workers. *Id.* at PageID.6-8. UWM did

2

nothing. After being repeatedly denied access to a sign language interpreter, UWM terminated Schwebke on May 1, 2020. Schwebke's record was devoid of any warning or discipline. *Id.* at PageID.8.

UWM had prelitigation knowledge of Schwebke's intent to file a lawsuit in court. On July 29, 2020, Schwebke filed a complaint against UWM with the EEOC. UWM participated in the EEOC process and received a copy of the right to sue letter issued on October 26, 2020. RTS Letter, R. 20-3.

On November 16, 2020, Schwebke, through his counsel, notified UWM via letter that Schwebke was "currently drafting a complaint to file in federal court." 11/16/2020 Letter, R. 20-4. The parties engaged in brief preliminary settlement discussions via email to no avail. Defense counsel closed negotiations by stating "I understand that means your client may choose to take further action." 12/23/2020 Email, R. 20-5.

## II. Completely inconsistent with an intent to arbitrate, UWM litigates Schwebke's claims through the close of discovery

Schwebke filed his Complaint in the district court on January 22, 2021, alleging violations of the American's with Disabilities Act ("ADA") and the Michigan People with Disabilities Civil Rights Act ("PWDCRA"). Compl., R.1. UWM immediately began participating in the litigation. Counsel for UWM entered an appearance on January 26, 2021. Appearance, R.3. UWM's participation in the litigation persisted without mention of arbitration until August 30, 2021. In all of its representations to the district court, UWM affirmatively indicated that it intended to litigate Schwebke's claims in court.

On February 16, 2021, UWM filed its Answer to the Complaint. Answer, R. 5. In its Answer, "UWM admits that jurisdiction is proper in this Court" and "admits that venue is proper in this Court." *Id.* at PageID.24. UWM's Answer sets forth seven affirmative defenses, none of which refer to arbitration, the Employment Agreement, or the district court's lack of jurisdiction over the matter. *Id.* at PageID.41-42.

UWM participated in the parties' Rule 26(f) conference on February 26, 2021. Arbitration was not raised, even though, per the district court's protocol, the parties' were required to and did discuss alternative dispute resolution methods. *See* 26(f) Report, R. 12 at PageID.59. On March 16, 2021, the parties filed their jointly-created Rule 26(f) Discovery Plan, in which UWM affirmatively represented to the district court that it intended to litigate—not arbitrate—the case. The plan, which is signed by counsel for UWM, states "This Court has subject matter jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Counts III and IV pursuant to 28 U.S.C. § 1367. Defendant does not contest that this Court has jurisdiction over Plaintiff's claims." *Id.* at PageID.55. The plan further states "This case is to be tried before a jury." *Id.*

UWM admits that "since conducting their Rule 26(f) conference" it "engaged in extensive discovery." Resp. to Mot. to Ext., R. 18 at PageID.239. Throughout discovery, UWM produced over 80,000 pages of documents, issued 15 non-party subpoenas, participated in eight depositions, stipulated to extending the discovery cut-

4

off, filed a witness list and propounded discovery requests to Schwebke. *See* Pl. Resp. to Mot. to Dismiss, R. 20 at PageID.385-87.

The written discovery in this case was extensive. UWM served its first set of discovery requests on Schwebke on February 26, 2021. UWM Disc., R. 20-7. The request contained 15 interrogatories, 25 requests for production of documents, and several broad releases of employment and educational records. *Id.* On April 2, 2021, UWM responded to Schwebke's first set of discovery requests, producing roughly 200 pages of documents. 4/2/2021 Disc., R. 20-8. Notably, UWM's production included the parties' Employment Agreement, which contains the arbitration agreement. *See* Empl. Agr., R. 20-26.

On April 14, 2021, UWM propounded 15 releases for employment and educational records to Schwebke. 4/14/2021 Disc., R. 20-9. On May 14, 2021, UWM made the first of several supplemental responses to Schwebke's first set of discovery requests. 5/14/2021 Email, R. 20-11. The supplemental production consisted of over 80,000 pages of documents. Additional supplements were made on May 20th, July 1st, July 8th, July 27th, and August 3rd. 5/20/2021 Disc., R. 20-12; 7/1/2021 Disc., R. 20-14; 7/8/2021 Disc., R. 20-15; 7/27/2021 Disc., R. 20-17; 8/3/2021 Disc., R. 20-18.

UWM also engaged in extensive non-party subpoena practice. On April 23, 2021, UWM issued subpoenas to 12 non-party entities and institutions. Defs. Subpoenas, R. 20-10 at PageID.466-557. Another subpoena was issued on August 18, 2021 and two

more subpoenas were issued on September 3, 2021. *Id.* at PageID.454-65; Stuckless Subpoena, R. 20-19.

UWM's participation in depositions was extensive. There was a total of eight depositions. Dep Cover Sheets, R. 20-16; Stuckless Subpoena, R. 20-19; Dep Notices, R. 20-23. UWM took Schwebke's deposition on July 30, 2021. The deposition was taken in-person with the aid of three sign language interpreters and lasted more than nine hours. R. 20-16. UWM also took the deposition of David Stuckless, a third-party witness on August 18, 2021. *Id.* UWM produced six UWM employees for depositions—Yang, Sanford, Tushaj, Kulak, Salvatore, and Dial. UWM participated in every depositions and had Deputy General Counsel for UWM Anthony Valentine attend four of the eight total depositions. *Id.*

On August 16, 2021, in adherence with the district court's scheduling order, UWM filed its witness list. Witness List, R. 14. The same day, the parties agreed to extend the August 26th discovery cut off by 25 days so that both parties could schedule additional depositions. 8/16/2021 Email, R. 16-17 at PageID.178.

In the two weeks prior to filing its motion to compel arbitration alone, UWM produced two witnesses, filed a witness list, agreed to extend discovery by 25 days, issued a subpoena, responded to discovery requests, and took a third-party deposition. *See* Pl. Resp., R. 20 at PageID.386-87. Schwebke learned of UWM's intent to arbitrate on August 30, 2021, when UWM sought concurrence in its Motion to Compel.

### III. UWM moves to compel arbitration then moves to extend the dispositive motion cutoff

On August 30, 2021—four days after the close of discovery and eight months after Schwebke filed his Complaint in court—UWM moved to compel arbitration. Mot. to Dismiss, R. 17. UWM argued that Schwebke's claims fell within the scope of the arbitration agreement contained in the Employment Agreement. UWM further argued that it had not waived its right to arbitrate because the case was in its "infancy," UWM's participation had been "minimal," and Schwebke would not be prejudiced if the court compelled arbitration. *Id.* at PageID.208. UWM provided no reason for why it waited until after the close of discovery to raise arbitration or why it did not invoke its right to arbitration in its earlier filings with the district court.

On September 20, 2021, Schwebke responded that the totality of the circumstances showed that UWM had waived its right to arbitration by taking action which was completely inconsistent with an intent to arbitrate. Pl. Resp., R. 20. The weight of several factors, including the length of delay in invoking arbitration, extensive participation in discovery, failure to raised arbitration as an affirmative defense and bad faith.

On November 5, 2021—11 days before the November 16th dispositive motion cut off—UWM moved to adjourn the dispositive motion cut off "to a date that is no earlier than thirty days following [the district court's] ruling on the Arbitration Motion." Defs Mot. to Ext., R. 25. On November 16, 2021, Schwebke moved for partial summary

judgment on his failure to accommodate claims (Counts I and III). Mot. for Part. SJ, R. 28. Schwebke responded to UWM's motion to extend the dispositive motion cut off on November 19, 2021. Resp to Mot. to Ext., R. 29.

Oral argument was held on UWM's Motion to Compel Arbitration on December 1, 2021. During the hearing, the district court asked counsel for UWM "Why did you wait this long [to compel arbitration]?" *See* Dkt. 25. at p. 33. Counsel for UWM responded "Candidly, because I didn't know that there was an arbitration clause, Your Honor." *Id.* at p. 34. UWM does not dispute that it was in possession of the fully executed Employment Agreement since it was signed by Schwebke on September 25, 2019. Nor does UWM dispute that it produced Employment Agreement in discovery on April 2, 2021.

On December 7, 2021 UWM responded to Schwebke's Motion for Partial Summary Judgment. The Motion is still pending before the district court.

On May 23, 2022, while UWM's Motion to Compel Arbitration was still pending before the district court, the Supreme Court issued its opinion in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022). As discussed in greater detail below, the Supreme Court held for the first time that prejudice to the non-moving party is not a consideration in finding that the moving party waived its right to arbitration. Schwebke and UWM filed notices of supplemental authority regarding *Morgan* with the district court on June 2 2022 and June 7, 2022 respectively. Pl Supp., R. 37; Defs Supp., R. 40.

On May 25, 2023, the district court entered its order denying UWM's motion to compel arbitration. Opinion, R. 45. The district court found that Schwebke's claims fell within the scope of the arbitration agreement.[1] However, the district court found that UWM knew of its right to arbitration and waived the right by taking action which was completely inconsistent with an intention to arbitrate. The district court correctly found that the totality of the circumstances—including the delay in raising arbitration, UWM's extensive participation in discovery, and failure to assert arbitration in UWM's Answer or in subsequent filings with the court—evinced UWM's intent to litigate rather than arbitrate Schwebke's claims. The district court found that "UWM's action in this case are similar to those in [*Johnson Assocs.*]" but looked at the "totality of the circumstances" in finding that UWM waived its right to arbitration.

UWM filed its notice of appeal on June 2, 2023. Not. of App, R.47. On June 8, 2023, the district court issued an Amended Opinion and Order denying UWM's Motion to Compel. Am. Opinion, R. 49. The May 25th Order erroneously stated that UWM filed a motion for summary judgment and therefore denied UWM's Motion to Extend Dispositive Motion Deadline as moot. The Amended Order denied the Motion to Extend Dispositive Motion Deadline without prejudice and states "Defendant may renew its motion within 21 days of the entry of this amended order."

---

[1] Neither party challenges the district court's finding that Schwebke's claims fall within the scope of the arbitration agreement on appeal.

## STANDARD OF REVIEW

A district court's denial of a motion to compel arbitration is reviewed de novo. *Johnson Assocs. Corp. C. HL Operating Corp.*, 680 F.3d 713, 716 (6th Cir. 2012) (affirming the district court's finding that the defendant waived its right to arbitrate). The issue of waiver is a mixed question of fact and law. *Cordrey v. Euckert*, 917 F.2d 1460, 1465 (6th Cir. 1990). The determination of any underlying facts by the district court is reviewed under the clearly erroneous standard, but when the underlying facts are undisputed, the issue of waiver is reviewed de novo. *Sandler v. All Acquisition Corp., Inc.*, 954 F.2d 382, 384-85 (6th Cir. 1992); *But c.f. St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 588 (7th Cir. 1992) ("Review of a finding that a party has waived its contractual right to invoke arbitration is for clear error only; it is not plenary").

## ARGUMENT

### I. *Morgan* eliminated the prejudice prong; the remainder of this Circuit's test for waiver is unchanged

Prior to *Morgan*, the test for determining whether a party waived its contractual right to arbitration was as follows: "A party implicitly waives its arbitration right…when (1) the party's acts are completely inconsistent with its arbitration right and (2) the party's conduct is prejudicial to an opposing party[.]" *Borror Prop. Mgmt., LLC v. Oro Karric North, LLC*, 979 F.3d 491, 494 (6th Cir. 2020) (cleaned up).[2] "Both inconsistency

---

[2] Prior to adopting the prejudice prong, this Court used the following test: "An agreement to arbitrate may be waived by the actions of a party which are completely

and actual prejudice [were] required." *Shy v. Navistar Intern. Corp*, 781 F.3d 820, 828 (6th Cir. 2015). *Morgan* eliminated the prejudice prong but left the "completely inconsistent" prong intact.

Until *Morgan*, this Circuit was amongst the majority of circuits that "invoked the strong federal policy favoring arbitration" in crafting "an arbitration-specific waiver rule" which demanded a showing of prejudice. *Morgan*, 142 S. Ct. at 1712; *See also O.J. Distrib., Inc. v. Hornell Brewing Co.*, 349 F.3d 345, 355-56 (6th Cir. 2003). The *Morgan* Court found that "[u]sually, a federal court deciding whether a litigant has waived a right does not ask if its actions caused harm." *Id.* at 1710. Thus, the question presented in *Morgan* was "whether the [Federal Arbitration Act ("FAA")] authorizes federal courts to create such an arbitration-specific procedural rule." *Id.*

*Morgan* holds that courts may not create arbitration-specific variants of federal procedural rules, "like those concerning waiver." *Id.* at 1712. Thus, it is incorrect "to condition a waiver of the right to arbitrate on a showing of prejudice." *Id.* at 1712-13. The court reasoned that, outside the arbitration context, federal courts do not analyze prejudice to the non-moving party in determining whether a waiver has occurred. *Id.* at 1713. The "bespoke rules of waiver for arbitration" derived from the "liberal national policy favoring arbitration." *Id.* But the policy favoring arbitration "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding

---

inconsistent with any reliance thereon." *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973).

refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Id.* (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)). Thus, a court must hold a party to an arbitration contract just as it would to any other contract and "may not devise novel rules to favor arbitration over litigation." *Id.*

The question resolved by *Morgan* is expressly narrow. *Id.* at 1712 ("We decide today a single issue, responsive to the predominant analysis in the Courts of Appeals, rather than to all the arguments the parties have raised"). In their briefing, the parties "disagreed about the role state law might play" as well as whether the issue should be framed in terms of waiver, forfeiture, estoppel, laches, or procedural timeliness." *Id.* The Court did "not address those issues" and assumed without deciding that federal law applied. *Id.*

The Court concludes that, on remand, "[s]tripped of its prejudice requirement," the Eighth Circuit is to apply what remains of its "current waiver inquiry." *Id.* at 1714. The test is "[d]id [Defendant]…knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id.* The effect of *Morgan*'s holding on this Circuit's precedent is identical. The prejudice prong is eliminated but the remaining prong requires the Court to decide whether UWM "[took] actions that are completely inconsistent with any reliance on an arbitration agreement." *U.S. ex rel Dorsa v. Miraca Life Sciences, Inc.*, 33 F.4th 352, 357 (6th Cir. 2022). This Circuit's existing caselaw

interpreting whether an action is "completely inconsistent" with its right to arbitrate is untouched.

UWM misrepresents the import of *Morgan*. The reasoning in *Morgan* does not "underscore the heavy burden" on the non-moving party; it completely eliminates it. *See* UWM's Brief, Dkt. 28 at p. 23. Prior to *Morgan*, this Court held that "*because of the strong presumption in favor of arbitration*, waiver of the right to arbitration is not to be lightly inferred." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005) (emphasis added); *See also Linglong Americas, Inc. v. Tire*, 2016 WL 2610264 at *2 (N.D. Ohio May 6, 2016) ("Given the Federal policy favoring arbitration, however, a waiver of the right to arbitration is 'not to be lightly inferred' and the party seeking to prove waiver bears a heavy burden of proof"). The "heavy burden" on parties arguing waiver derived solely from the fact that the right at issue was the right to arbitrate. But *Morgan* holds that such "bespoke" rules—based solely on the policy in favor of arbitration—are impermissible. *Morgan*, 142 S.Ct. at 1713 ("the FAA's policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules"). Arbitration contracts stand on the same footing as all other contracts. *Id.* The burden for showing waiver of an arbitration contract is no heavier than it is for other contracts.

To the extent UWM asks this Circuit to adopt an entirely new test for assessing whether a party waived its right to arbitration, UWM, again, misrepresents *Morgan*'s mandate. Based on *Morgan*'s closing paragraph, UWM posits that the Supreme Court left it open for this Court to decide whether to "continue with its old test minus the

13

prejudice requirement…or apply a different procedural framework." *See* Dkt. 28 at p. 23. Read in context, however, the Supreme Court's reference to a "different procedural framework" refers to the disagreement between the parties in that case as to whether the issue should be framed in terms of "waiver, forfeiture, estoppel, laches, or procedural timeliness." *Morgan*, 142 S.Ct. at 1712. The Supreme Court made clear it was referring to this case-specific issue: "On remand, the Court of Appeals may resolve that question, or (as indicated above) determine that a different procedural framework (such as forfeiture) is appropriate. See *supra*, at 1712." *Id.* at 1714.

*Morgan* does not, "theoretically" or otherwise, instruct the Courts of Appeals to start from scratch and adopt an entirely new waiver rule. To the contrary, the Supreme Court instructs courts to ask "Did [the defendant] …knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Morgan*, 142 S.Ct. at 1714. The remainder of this Circuit's waiver rule remains intact as does the caselaw interpreting the remaining prong.

UWM concedes that the controlling test is whether the defendant took action which is completely inconsistent with its right to arbitrate. *See* Dkt 28. at p. 18. UWM points to no case in which courts have imposed a "heavy burden" on litigants claiming waiver of a contractual rights. UWM's references to treatises and Michigan caselaw likewise fail to support the contention that Schwebke is subject to a heavy burden. *Id.* at p. 16-17. The burden to show that UWM waived its right to arbitration is easily met

here, as UWM took persistent actions which were completely inconsistent with any reliance on the arbitration agreement.

## II.    UWM waived its right to arbitrate by taking action which was completely inconsistent with an intent to arbitrate

The district court correctly found that UWM waived its right to arbitrate. The totality of the circumstances shows that UWM did not intend to arbitrate. Indeed, there is no action that UWM took prior to filing its motion to compel which was consistent with an intent to arbitrate.

There is no concrete test to determine whether a party has acted "completely inconsistent" with an intent to arbitrate. *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Rather, courts look to several factors to determine whether the party waived the right to arbitrate including but not limited to (1) the length of delay in invoking arbitration; (2) extensive participation in discovery; (3) failure to raise arbitration as an affirmative defense; (4) utilizing discovery methods not available in arbitration; and (5) bad faith. *Johnson Assocs.*, 680 F.3d 713; *O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345 (6th Cir. 2003). No one action is dispositive, rather the defendant's actions are to be considered together. *See Alli v. Savitz, Est. of*, 2009 WL 10680536 at *3 (E.D. Mich. Oct. 22, 2009). "[T]he essential question in determining waiver is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *S. Sys., Inc. v. Torrid Oven Ltd.*, 105 F.Supp.2d 848, 854 (W.D. Tenn.

July 25, 2000) (quoting *Nat'l Found. For Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)) (cleaned up).

### a.    Length of delay

UWM's Motion to Compel Arbitration came over seven months into the litigation and four days after the close of discovery. As set forth below, no explanation for the delay has been provided. UWM learned that a lawsuit had been filed against it in court when counsel accepted service of the Complaint and Summon on January 25, 2021.[3] Despite having actual knowledge of the arbitration agreement and the fact that the case was proceeding in court, UWM sat on its hands for over seven months before raising arbitration for the first time in its Motion to Dismiss/Compel Arbitration on August 30, 2021.

Absent some action which is consistent with an intent to arbitrate, courts have repeatedly found that similar delays support a finding of waiver. *See e.g. Johnson Assocs.*, 680 F.3d at 718 (delay of eight months supported finding of waiver); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (delay of eight months supported finding of waiver); *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1513 (11th Cir. 1990) (delay of eight months supported finding of waiver); *Miller Brewing Co. v. Fort Worth Distrib., Co., Inc.*, 781 F.2d 494, 497 (5th Cir. 1986) (delay of eight months supported finding waiver); *Doe v. Trump Corp.*, 453 F.Supp.3d 634

---

[3] Counsel for UWM filed an appearance in the case on January 26, 2021.

(S.D.N.Y. 2020) (delay of eight months supported finding waiver); *Smith v. Allstate Power Vac., Inc.*, 482 F.Supp.3d 40 (E.D.N.Y. 2020) (delay of nine months supported finding of waiver); *Kelleher v. Dream Catcher, L.L.C.*, 263 F.Supp.3d 253 (D.D.C. 2017) (defendant forfeited right to arbitrate by delaying six months before moving to compel); *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 945 F.Supp. 834 (E.D. Pa. 1996) (seven month delay supported waiver); *U.S. Army Officer Candidate Sch. Alumni Assoc., Inc. v. Southern States Bank*, 2018 WL 9371678 (M.D. Ga. May 21, 2018) (delay of six months supported finding waiver); *Commercial Lubricants, LLC v. Safety-Kleen Sys., Inc.*, 2018 WL 5045760 (E.D.N.Y. Oct. 17, 2018) (seven month delay supported finding waiver); *Wilson Sporting Goods Co. v. Penn Partners*, 2004 WL 2033063 at *4 (N.D. Ill. Aug. 21, 2004) (engaging in discovery for five months was inconsistent with intent to arbitrate); *Debois, Inc. v. Guy*, 161 N.E.3d 99 (Ohio Ct. App. 2020) (delay of five months supported finding waiver); *Chrysler Fin. Servs. v. Henderson*, 2011 WL 6927638 (Ohio Ct. App. Dec. 23, 2011) (delay of six months supported finding waiver); *Adolph v. Coastal Auto Sales, Inc.*, 184 Cal.App.4th 1443 (Cal. Ct. App. 2010) (delay of six months supported waiver).

UWM's contention that an eight-month delay sets a "low water mark" for waiver is fictitious. Delays of six months or less have been deemed sufficient to support a finding of waiver. *See e.g. Steese v. Canton Regency*, 204 N.E.3d 700, 704 (Ohio Ct. App. 2022); *See also Vining v. Logan Clutch Corp.*, 2020 WL 948777 at *3-4 (Ohio Ct. App. Feb. 27, 2020) (collecting cases). In any event, there is no magic number of months which conclusively resolves the waiver inquiry. Rather, the amount of delay is interrelated to

the extent the party participated in the litigation. "The question to be answered is not so much whether [the defendant] has delayed invoking its asserts arbitration right, but rather whether litigation machinery has been substantially invoked." *In re Polyurethane Foam Antitrust Lit.*, 998 F.Supp.2d 625, 633 (N.D. Ohio Feb. 25, 2014) (citing *Mantaline Corp. v. PPG Indus., Inc.*, 225 F.3d 659 (6th Cir. 2000)); *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) ("A key factor in deciding this is whether a party has substantially invoked the litigation machinery prior to demanding arbitration"). There can be no question here—where UWM failed to raise arbitration until the close of the parties' extensive discovery—that the "litigation machinery" had been "substantially invoked."

UWM's attempt to distinguish itself from cases involving more egregious delays that stretched beyond the one-year mark are unavailing. Courts have held that litigants did not waive their right to arbitration, even after multiple year delays, in cases in which discovery had not yet begun and thus the "litigation machinery" was not substantially invoked. For example, in *Aqualucid Consultants, Inc. v. Zeta Corp.*, 721 F.App'x. 414, 416-17 (6th Cir. 2017) this court held that a two-year delay in raising arbitration did not amount to waiver because discovery had not yet begun and the case was still in its nascent stage.

Here, UWM's delay of nearly eight months, coupled with its extensive participation in litigation and affirmative representations to the district court regarding

UWM's intention to litigate, as set forth below, is sufficient to find that UWM took action which was completely inconsistent with an intent to arbitrate.

### b.   Extensive participation in discovery

A finding that a party participated in extensive discovery weighs heavily in favor of a finding that the party waived its right to arbitrate. *S. Sys.*, 105 F.Supp.2d at 854. Courts have held that a party waived its right to arbitrate where the party engaged less actively in discovery than UWM has here. For example, in *Rugumbwa v. Betten Motor Sales*, the court found that the defendant engaged in "substantial discovery," inconsistent with its right to arbitrate, where it propounded two sets of discovery requests and took the plaintiff's deposition. 136 F.Supp.2d 729, 734 (W.D. Mich. 2001). In *Johnson Assocs.*, this Court found that the defendant waived its right to arbitration, in part, by serving one set of discovery requests, and noticing eight depositions which were never taken. 680 F.3d at 721.

UWM admitted that it engaged in "extensive discovery" while litigating this case. Defs Resp to Mot. to Ext., R. 18 at PageID.239. As set forth above, UWM produced well over 80,000 pages of documents, issued 14 third-party subpoenas for documents, attended the parties' Rule 26(f) conference, participated in creation of the Rule 26(f) report, deposed eight witnesses, stipulated in extending the discovery cutoff, and filed a witness list with the district court. Two of the depositions were noticed by UWM, including Schwebke's lengthy deposition which involved the use of three sign language

interpreters and lasted over nine hours. There is nothing about UWM's participation in discovery which can be fairly characterized as consistent with arbitration.

UWM's efforts to downplay and discredit the extensive discovery conducted in this case is unavailing. UWM's contention that the Court should give no weight to the fact that UWM provided extensive responses to Schwebke's discovery requests has no basis in law. Courts consider a party's participation in discovery without regard to whether the party is propounding or responding to discovery requests. *See e.g. Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (defendant acted inconsistently with intent to arbitrate in part by participating in discovery which included "answering discovery, and preparing for and conducting a deposition"); *In re Cox Ent., Inc. Set-top Cable Tele. Box Antitrust Lit.*, 790 F.3d 1112, 1115 (3d Cir. 2015) (finding waiver of right to arbitrate based in part on the parties' "extensive pretrial discovery" including "exchanging tens of thousands of documents"); *LeBlanc v. Halliburton Co.*, 414 F.Supp.3d 1360, 1368 (D.N.M. 2019) (defendant waived right to arbitrate in part by "serv[ing] and respond[ing] to discovery requests").

It is unsurprising that, in this employment action, UWM sought less in discovery from Schwebke than Schwebke sought from UWM. As the employer, UWM was in possession of the majority of the relevant documents, while Schwebke was not. *See e.g. Waters v. Pizza to You, LLC*, 2021 WL 5416536 at *4 (S.D. Ohio Nov. 18, 2021) (finding that employer had sole access to discoverable email communications relevant to FLSA claim); *Hayse v. City of Melvindale*, 2018 WL 11176493 at *6 (E.D. Mich. Apr. 10, 2018)

(no dispute that defendant in employment case had "greater access to all of the requested discovery"); *See also Khan v. Parsons Global Servs. Ltd.*, 521 F.3d 421, 428 (D.D.C. 2008) (holding that the defendant waived right to arbitrate and finding that defendant's "non-pursuit of discovery" from plaintiff was "of no moment" because "discovery would likely focus almost entirely on documents and testimony in the possession and control of [defendant]").

In any event, UWM's "affirmative" discovery was not limited to requests for production and interrogatories to Schwebke. Despite being in possession of the majority of relevant documents and information in this case, UWM engaged in sweeping non-party discovery, including issuing 14 subpoenas requesting the production of documents. UWM also took two depositions, one of which—witness David Stuckless—was taken pursuant to a 15th non-party subpoena. The other— Schwebke's deposition—as set forth above, was incredibly involved and expensive. UWM's characterization of their "affirmative" discovery as "limited" is disingenuous.

There is no support for UWM's contention that the Court should distinguish between affirmative and responsive discovery. *Germany v. River Terminal Ry. Co.* does not stand for the proposition that a defendant's responses to discovery requests should not be considered in assessing whether a party acted inconsistently with an intent to arbitrate. Indeed, "*Germany* provides no explanation of the factors a district court should look to in order to decide if there has been waiver." *DWS Int'l, Inc. v. Arts*, 2010 WL 11489126, at *3 (S.D. Ohio June 21, 2010). Nor does *Hurley v. Deutsche Bank Trust Co.*

21

*Americas*, where this Court held that the defendant acted completely inconsistent with its right to arbitrate by "consistently and actively litigat[ing] this action in court." 610 F.3d 334, 338-39 (6th Cir. 2010). The *Hurley* court does not discuss what discovery was taken in the case but found that the defendant's action in "not only respond[ing] to actions taken by Plaintiffs" but initiating the defendant's own motion practice evinced waiver. *Id.* In other words, it was irrelevant to the *Hurley* court that the defendant's actions were initiating or responding.

*Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200 (4th Cir. 2004), an out of circuit case, adds nothing to UWM's argument either. It does not hold that a litigant's responses to discovery requests do not constitute participation in litigation. Rather, the cited portion of *Patten Grading & Paving* deals with the court's holding that the plaintiff did not suffer actual prejudice as a result of the defendant's delayed invocation of arbitration. *Id.* at 206. The plaintiff pointed to the parties' motion practice in claiming it was prejudiced by the delay (a requirement that no longer exists after *Morgan*). The court found that the plaintiff did not suffer actual prejudice because none of the motions were filed by the defendant and none dealt with the merits of the plaintiff's claims. Indeed, the *Patten Grading* court looks at the parties' participation in discovery in evaluating whether the defendant waived its right to arbitration and makes no distinction between discovery the defendant propounded versus the discovery it responded to. *Id.* at 206-07. The court ultimately found that the degree of participation in discovery was insufficient to constitute waiver because, unlike here, "the written

discovery conducted…was limited" and "the parties had not proceeded with time-consuming and expensive depositions." *Id.* at 207.

Likewise, UWM's request that this Court disregard three depositions taken by Schwebke after UWM filed its Motion to Compel is unavailing. *See* Dkt. 28 at p. 23. UWM filed its Motion to Compel on August 30th. Weeks prior, UWM agreed to produce Kulak, Salvatore, and Dial. Due to scheduling conflicts, UWM also agreed to extend discovery from August 26th to September 20th for the express purpose of accommodating the depositions. Indeed, between August 16, 2021 and August 24, 2021, the parties communicated extensively over email about witness availability and how long discovery should be extended. 8/16/2021 Emails, R. 16-17. Completely inconsistent with an intent to arbitrate, UWM failed to notify Schwebke of its "intent" to move the claims to arbitration. Nor did UWM seek to delay the depositions until the arbitration issue was resolved. The depositions proceeded as they were scheduled, before arbitration was ever invoked.

UWM's remaining argument fails to carry the day. It is irrelevant that "arbitration also involves discovery." *See* Dkt. 28 at p. 24.  It is entirely speculative as to whether an arbitrator would have allowed the extensive discovery conducted in this case. Indeed, it is widely acknowledged that discovery is generally more limited in arbitration than in court. Further, as set forth below, the majority of courts hold that the non-party document production utilized by UWM in this case, would not have been available to it in arbitration.

UWM's extensive participation in discovery is completely inconsistent with an intention to arbitrate and is a clear waiver of the right.

### c.    Failure to raise arbitration as a defense or in representations to the district court

Completely inconsistent with an intent to arbitrate, UWM never raised an intent to arbitrate with the district court or Schwebke until its August 30th Motion to Compel. It had multiple opportunities to do so. Instead, prior to August 30th, all of UWM's representations to the district court affirmatively evinced an intent to litigate in court.

In its Answer, filed on February 16, 2021, UWM failed to raise arbitration as an affirmative defense. Answer, R. 5. This Court unequivocally states that "a defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate." *Johnson Assocs.*, 680 F.3d at 718. This is because a contractual right to arbitrate operates as "quasi-jurisdictional bar" to the plaintiff's claims. *Id.* UWM's goes one step further and "admits" in its Answer "that jurisdiction is proper" before the district court.

UWM's efforts to downplay its failure to raise arbitration in its Answer are unavailing. Contrary to UWM's assertion that parties "routinely" fail to plead arbitration as an affirmative defense, "[t]he filing of an answer is, after all, the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue." *Johnson Assocs.*, 680 F.3d at 718.

It is irrelevant that the district court did not set a deadline for motions to amend the pleadings. *See* Dkt. 28 at p. 22. UWM never sought leave to amend its Answer. It is entirely speculative that leave to amend would be granted to add an affirmative defense after the close of discovery. *See Newburgh/Six Mile Ltd. Partnersip II v. Adlabs Films USA, Inc.*, 483 F.App'x. 85, 92-94 (6th Cir. 2012) (affirming denial of leave to amend to add an affirmative defense after the close of discovery); *Pittman ex rel. Sykes v. Franklin*, 282 F.App'x. 418, 425-26 (6th Cir. 2008) (same).

On March 16, 2021, UWM, again, made affirmative representations to the district court about its intent to litigate Schwebke's claims in court in the parties' Joint 26(f) report, which states "this case is to be tried by a jury." UWM was unequivocal in its intention to proceed in court. Adhering to the district court's scheduling order, UWM doubled down on its intention to proceed in court with a jury trial when, on August 16, 2021, it filed its witness list with the court. *See White v. Samsung Elecs. Am. Inc.*, 61 F.4th 334, 340 (3d. Cir. 2023) (defendant's acquiescence in the district court's pre-trial orders evinced waiver of right to arbitrate).

### d.    Discovery not available in arbitration

Use of court-sanctioned discovery to obtain information that would not have been available in arbitration is completely inconsistent with an intent to arbitrate. *Johnson Assocs.*, 680 F.3d at 719-20; *Uwaydah v. Van Wert Cty. Hosp.*, 246 F.Supp.2d 808, 810 (N.D. Ohio 2002); *S. Sys. v. Torrid Oven Ltd.*, 105 F.Supp.2d 848, 854 (W.D. Tenn. 2000). Throughout the litigation, UWM engaged in extensive discovery via third-party

subpoenas of documents, a discovery method that would not have been available to it in arbitration.

The FAA narrowly restricts the arbitrator's subpoena power. *Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 216 (2d Cir. 2008); *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407 (3d Cir. 2004). The majority of courts hold that Section 7 of the FAA, which deals with the arbitrator's subpoena power, does not allow an arbitrator to order document discovery from third parties prior to a hearing. *Westlake Vinyls, Inc. v. Resolute Mgmt, Inc.*, 2018 WL 4515997 at *2-3 (W.D. Ky. Aug. 21, 2018) (collecting cases); *See also See also CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 708 (9th Cir. 2017) ("we reject the proposition that section 7 grants arbitrators implicit powers to order document discovery from third parties prior to a hearing"). While this Circuit has declined to decide the circuit split as to this issue, lower courts in this Circuit follow the majority approach in holding that arbitrators are not empowered to order third-party subpoenas for documents prior to a hearing. *See Westlake*, 2018 WL 4515997 at *6; *Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 2019 WL 5680811 at *2 (E.D. Mich. June 26, 2019) ("Section 7 does not allow arbitrators to subpoena third-parties for discovery purposes).

Completely inconsistent with an intent to arbitrate, UWM engaged in extensive non-party subpoena practice during discovery. UWM issued 14 subpoenas for documents to non-parties in this case, garnering over 600 pages of documents that would have been undiscoverable in arbitration. On September 3, 2021, after UWM filed

its Motion to Compel, UWM issued two more non-party subpoenas for documents, completely inconsistent with its intention to arbitrate. *See S. Sys., Inc.*, 105 F.Supp.2d at 855-56 (finding that defendant's invocation of the court's assistance in compelling discovery which would not be available in arbitration, while its motion to compel arbitration was pending was completely inconsistent with an intent to arbitrate).

UWM's reliance on the Michigan Uniform Arbitration Act ("MUAA") for the contention that the same discovery would have been available in arbitration is misplaced. *See* Dkt. 28 at p. 24. It is well-established that "the FAA preempt[s] states' laws that are inconsistent with the FAA." *Stutler v. TK Constructors, Inc.*, 448 F.3d 343, 347 (6th Cir. 2006). UWM's reliance on *American Fed. of Television and Radio Artists, AFL-CIO v. WJBK-TV (New World Commc'ns of Detroit, Inc.)*, 164 F.3d 1004 (6th Cir. 1999) is likewise misplaced. *American Federation* dealt with an arbitrator's authority to issue subpoenas under the Labor Management Relations Act ("LMRA"), not under the FAA. *Id.* at 1008. "*American Federation* does <u>not</u> authorize [an arbitrator's subpoena for documents prior to a hearing]" expressly or implicitly. *Westlake* 2018 WL 4515997 at *5-6 (explaining why *American Federation* does not decide the circuit split as to this issue). Lastly, *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865 (8th Cir. 2000), Eighth Circuit case, offers no support for UWM's argument. The Eighth Circuit stands alone in the minority camp of the circuit split on this issue. *Westlake*, at *2. This Court has never favorably cited the minority view.

It is untenable that UWM could utilize the courts to obtain discovery that would not be available in arbitration and then at the 11th hour, change course and demand arbitration. While prejudice is no longer a requirement in finding waiver, it remains a relevant consideration. Actual prejudice exists where, as here, a party has gained a strategic advantage by obtaining something in discovery that would not be available in arbitration. *Johnson Assocs.*, 680 F.3d at 719-720 (citing *Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991)); *In re Polyurethane Foam*, 998 F.Supp.2d at 636. UWM cannot be permitted to get the best of both worlds—all the benefits of broad discovery under the Federal Rules of Civil Procedure and the truncated procedures of arbitration. UWM chose to litigate and avail itself of the federal court's powers and authority. It cannot change course only after the company has reaped all the benefits the courts offer and hide from a trial by jury.

### e. Bad faith, lack of credible excuse for delay, and laxness

Courts have consistently found that a showing of bad faith, dilatory motive— e.g. obtaining a strategic advantage through delay, "or at the very least laxness, weighs in favor of a finding of waiver." *Stratton v. Portfolio Recovery Assocs., LLC,* 2015 WL 667551 at *4 (E.D. Ky. Nov. 2, 2015) (citing *Gen. Star Nat. Ins. Co.*, 289 F.3d 434).

UWM has never provided a credible excuse for its delay, distinguishing this case from others where the moving party's delay did not constitute waiver. The company drafted the Employment Agreement which contains the arbitration provision and thus has had knowledge of its existence since September 25, 2019. This is undisputed.

Moreover, UWM produced a copy of the Employment Agreement to Schwebke in its first set of responsive discovery documents on April 2, 2021. The absence of a credible excuse for delay in invoking the arbitration agreement weighs in favor of finding waiver. *See Gunn v. NPC Int'l., Inc.*, 625 F.App'x. 261, 265 (6th Cir. 2015) ("[a]bsent any semblance of a colorable justification" for delay, defendant found to have acted completely inconsistent with intent to arbitrate").

During oral argument on its Motion to Compel, the district court asked UWM what the reason for the delay was. Defense counsel responded "[c]andidly, because I didn't know that there was an arbitration clause, Your Honor." UWM's "mistaken" failure to invoke arbitration provision is irrelevant in light of UWM's actual knowledge of the agreement. *See S. Sys., Inc.*, 105 F.Supp.2d at 856 (finding that defendant's excuse for delay—counsel's ignorance of the arbitration agreement—was "disingenuous" in light of actual knowledge of the agreement); *Rugumba*, 136 F.Supp.2d at 734 (W.D. Mich. 2001) (rejecting defendant's "troubling contention" that it was not aware of the arbitration agreement where agreement was contained in defendant's own forms).

UWM's delayed invocation of arbitration was intentional. The change in strategy came after the close of discovery and after a flurry of unfavorable, shifting deposition testimony from UWM employees. No witness was able to answer the question of why there was virtually no interactive process, why Schwebke was not provided a sign language interpreter for monthly performance reviews or regularly scheduled, large meetings, or the specifics of why he was terminated. UWM repeatedly failed to identify

the relevant decisionmakers in response to discovery requests and withheld relevant documents throughout the litigation, resulting in six supplemental productions of documents, largely the result of testimony revealing their existence. Multiple witnesses—UWM's own employees—testified that Schwebke should have been provided an interpreter and that his treatment was unfair.

UWM realized, after the close of discovery, that this case would not do well in front of a jury and sought to hide the case in arbitration. UWM's delayed invocation of arbitration is a "quintessential delaying tactic and effort at forum-shopping" that "makes a mockery of the purpose of arbitration." *Uwaydah v. Van Wert Cty. Hosp.*, 246 F.Supp.2d 808, 813-14 (N.D. Ohio 2002). Allowing UWM to proceed in arbitration at the eleventh hour is untenable.

> If plaintiff's demand for arbitration were to be upheld, there would be nothing to keep any litigant with an arbitration clause from testing the judicial waters, and to do so for as long as he liked, even to the point where the case has arrived on the brink of resolution, and then nullifying all that has gone before by demanding arbitration. If that is what a deliberately delayed demand for arbitration can do, then all that is bad about litigation—including most particularly unnecessary delay, wasteful expense, and the manipulative impulse to forum-shop—would be fostered, rather than deterred.

*Id.* at 814. There is "no plausible interpretation of the reason for the delay except that [defendant] initially decided to litigate its dispute…in the federal district court, and that later, for reasons unknown and with no shadow of justification, [defendant] changed its

mind and decided it would be better off in arbitration." *Cabintree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).

UWM's lack of credible excuse for delay evinces improper forum shopping. *Warrington v. Rocky Patel Premium Cigars, Inc.*, 2023 WL 1818920 at *2 (11th Cir. Feb. 8, 2023) ("Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime"). This factor weighs heavily in favor of finding waiver. *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 455 (3d Cir. 2011) ("It is significant that, at least to the best of our knowledge, [defendant] offered no explanation to the District Court for its delay in waiting ten months after filing suit in the District Court before seeking enforcement of the arbitration provision").

## III.  UWM proposed bright line test for inferring waiver of the right to arbitrate are unduly narrow

As set forth above, the totality of the circumstances establishes that UWM waived its right to arbitration. UWM asks this Court to do away with a "totality of the circumstances" approach and to instead adopt an unnecessarily narrow, bright-line rule that a party only waives its right to arbitration when the party requests affirmative relief from a court. UWM's proposed rule flies in the face of *Morgan*'s prohibition on creating bespoke, arbitration-specific rules and is plainly impermissible.

No Circuit has adopted any bright-line rule test for determining waiver. To the contrary, each circuit looks to a number of factors, none of which are dispositive, and

evaluates the facts of each case. *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) ("we have declined to sharply define what conduct suffices [to establish waiver], it typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate"); *See also Warrington v. Rocky Patel Prem. Cigars, Inc.*, 2023 WL 1818920 at *2 (11th Cir. Feb. 8, 2023) ("[t]here's no set rules as to what constitutes waiver of an arbitration agreement, so we review whether a waiver has occurred based on the facts of each case") (quoting *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir. 1971)); *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) ("There is no concrete test to determine whether a party has acted 'completely inconsistent' with an intent to arbitrate"); *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) ("There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case").

While requesting affirmative relief from a court may be a factor which indicates that a party has no intention of arbitrating, there is no basis for concluding—as UWM has—that it is dispositive of the issue. Courts have come out both ways: finding waiver where there was no motion practice and not finding waiver even where there was involved motion practice. *See e.g. Day v. Spectrum Health Med. Grp.*, 2020 WL 13682747 (W.D. Mich. Aug. 11, 2020) (finding waiver where defendant did not engage in motion practice); *Lease Grp. Res., Inc. v. Detroit Pub. Sch. Dist.*, 2009 WL 1010921 (E.D. Mich.

Apr. 14, 2009) (defendant waived right to arbitrate without engaging in motion practice); *Sampson v. GJ Gentry Gen. Engineering, Inc.*, 2023 WL 6139562 (Cal. Ct. App. Sept. 20, 2023) (defendant waived right to arbitrate by delaying two years before moving to compel, failing to include arbitration in affirmative defenses, responding to plaintiff's discovery, agreeing to deposition dates, and engaging in mediation). Likewise, courts have held that there was no waiver by a party who sought relief from the court via motion practice because the case had not progressed so far as to say the party acted completely inconsistent with the right to arbitrate. *See e.g. Boustead Securities, LLC*, 2023 WL 2481109 at *4 (S.D.N.Y. Feb. 14, 2023) (finding no waiver after 24 month delay where defendants filed three motions to dismiss but the parties had engaged in "virtually no discovery" and defendant had not yet filed an answer); *In re Generali COVID-19 Travel Ins. Lit.*, 577 F.Supp.3d 284, 294 (S.D.N.Y. 2021) (finding no waiver after one year delay where defendant filed two motions to dismiss before filing motion to compel arbitration and the parties had not yet engaged in discovery).

A bright-line rule that the right to arbitration cannot be waived unless the right holder seeks affirmative relief on the merits from a court is just the kind of arbitration-specific, "bespoke" rule the Supreme Court prohibited in *Morgan*. This Court should continue to look at the totality of the circumstances to ask whether a party took action which was "completely inconsistent" with its right to arbitrate. As in other cases analyzing waiver outside the context of arbitration, this is a fact specific inquiry which is not amenable to bright line rules. *Blessing v. Chandrasekhar*, 988 F.3d 889 (6th Cir. 2021)

(clarifying that there is no bright line rule that filing an appearance causes a defendant to waive a personal jurisdiction defense).

The totality of the circumstances here, demonstrates that UWM waived its right to arbitrate. The district court correctly found that "UWM's actions in this case are similar to those in *Johnson*." The *Johnson* court found that several factors combined to demonstrate that the defendant's actions were completely inconsistent with an intent to arbitrate including: failing to raise arbitration as an affirmative defense, delaying eight months after the case began before raising arbitration, filing a counter-claim, participating in settlement discussions, engaging in extensive discovery including requests to produce and interrogatories to the plaintiff, noticing—but taking—eight depositions, and producing a hard drive with 4.11 gigabytes of responsive discovery. *Johnson Assocs.*, 680 F.3d 713 (6th Cir. 2012). The court expressly declined to find that any one factor alone was dispositive of the waiver inquiry. *Id.* at 719 ("regardless of whether each of these circumstances is insufficient to show that Hartmann acted completely inconsistently with its right to arbitration, they may well be sufficient when considered together").

UWM makes much of the fact that *Johnson* is not on all fours with the present case. The argument is unavailing. The fact-specific, totality of the circumstances approach to waiver counsels against requiring a case that is directly on-point. The district court correctly determined that, regardless of the ways in which *Johnson* was distinguishable, the totality of the circumstances in this case amounted to waiver. For

34

instance, the defendant in *Johnson* filed a counterclaim but no depositions were taken. Here, UWM did not file a counterclaim but participated in eight depositions through the close of discovery. No one action is dispositive.

*Lease Group Resources, Inc. v. Detroit Pub. Sch. Dist.*, is also illustrative of the totality of circumstances which constitute a finding that defendant acted "completely inconsistent" with the right to arbitrate. 2009 WL 1010921 (E.D. Mich. Apr. 14, 2009). There, the court held that the defendant waived its right to arbitration when it 1) failed to include arbitration as an affirmative defense; 2) participated in discovery without objection; 3) filed a witness list; 4) failed to raise the prospect of arbitration with the Court in any manner until after the close of discovery; and 5) delayed for more than eight months before invoking the right to arbitrate. *Id.* at *4.

*Lease Group* is distinguishable from the present matter in only one respect: the defendant failed to object to court ordered mediation[4] and waited to invoke its arbitration rights until after the plaintiff filed a motion for summary judgment. The fact that the district court did not issue an order referring the case to mediation or that it raised arbitration one month before Schwebke moved for partial summary judgment do not preclude a finding a waiver. There is no concrete test for determining when a party has acted completely inconsistently with its rights. Here, UWM has engaged in

---

[4] There is no indication *Lease Group* that the parties actually participated in mediation. The court merely notes that the defendant failed to object to the order referring the case to mediation.

other conduct which is equally as indicative of its intent to litigate, rather than arbitrate, this dispute such as UWM's extensive discovery conduct, energetic usage of discovery methods not available in arbitration, and representations to the Court in the Joint 26(f) Report.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court affirm the district court's Order denying Defendant's Motion to Dismiss and Compel Arbitration.

Dated: October 13, 2023                    Respectfully submitted,
**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff-Appellee
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 37(a)(7) because it contains 9,186 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1), as counted using the word-count function on Microsoft Word 2016 software.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Garamond style 14 point font.

Dated:  October 13, 2023                          Respectfully submitted,

                                                  */s/ Deborah L. Gordon*
                                                  Deborah L. Gordon

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2023, I electronically filed the foregoing document with the clerk of the Court using the ECF system, which will serve all registered parties.

                          Respectfully submitted,
                          **DEBORAH GORDON LAW**
                          /s/Deborah L. Gordon (P27058)
                          Attorneys for Plaintiff-Appellee
                          33 Bloomfield Hills Parkway, Suite 220
                          Bloomfield Hills, Michigan 48304
                          (248) 258-2500
                          dgordon@deborahgordonlaw.com

# ADDENDUM

## Designation of Relevant District Court Documents

| Record Entry No. | Description of Entry | Page ID Range |
|---|---|---|
| 1 | Complaint | 2–3; 4–5; 6–8 |
| 3 | Appearance re: Defendant Counsel | 19–20 |
| 5 | Answer to Complaint | 24; 41–42 |
| 12 | 26(f) Report | 55; 59 |
| 14 | Defendant Initial Witness List | 66–70 |
| 16-17 | 8/16/2021 Email | 178 |
| 17 | Defendant Motion to Dismiss or Alternatively, Stay Proceedings and Compel Arbitration | 208 |
| 18 | Defendant Response to Plaintiff's Motion to Extend Discovery | 239 |
| 20 | Plaintiff's Response to Defendant's Motion to Dismiss | 385–387 |
| 20-3 | 11/16/2020 Letter | 412–413 |
| 20-5 | 12/23/2020 Email | 417–418 |
| 20-7 | UWM 1st Interrogatories and Requests to Produce Documents to Plaintiff | 423–440 |
| 20-8 | 4/2/2021 Defendant's Answer to Plaintiff's 1st Interrogatories and Requests to Produce Documents | 442–450 |
| 20-9 | 4/14/2021 Email re: subpoenas | 452 |
| 20-10 | Defendant's Subpoenas | 464–465; 466–557 |
| 20-11 | 5/14/2021 Email | 559 |
| 20-12 | 5/20/2021 Discovery Email | 561 |
| 20-14 | 7/1/2021 Discovery Email | 565–566 |
| 20-15 | 7/8/2021 Discovery Email | 568 |
| 20-16 | Dep Cover Sheets | 570–580 |
| 20-17 | 7/27/2021 Discovery Email | 582 |
| 20-18 | 8/3/2021 Discovery Email | 584 |
| 20-19 | Stuckless Subpoena | 586–590 |
| 20-23 | Dep Notices | 609–612 |
| 20-26 | Employment Agreement | 632–633 |

| 25 | Defendant's Motion to Extend Dispositive Motion Deadline | 665–667 |
|----|----|----|
| 28 | Plaintiff's Motion for Partial Summary Judgment | 681–725 |
| 29 | Plaintiff's Response to Defendant's Motion to Extend Dispositive Motion Deadline | 1109–1117 |
| 37 | Plaintiff's Supplemental Brief as to New Authority issued on May 23, 2022 | 2223–2226 |
| 40 | Defendant's Supplemental Brief in Support of its Motion to Dismiss | 2241–2249 |
| 45 | Opinion and Order | 2282–2297 |
| 49 | Amended Opinion and Order | 2301–2316 |