Nos. 23-1507, 23-1551

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

JASON SCHWEBKE,

*Plaintiff-Appellee,*

v.

UNITED WHOLESALE MORTGAGE LLC,
d/b/a UWM, a Michigan corporation,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the Eastern District of Michigan
Docket No. 2:21-cv-10154
The Honorable Denise Page Hood

_____

## APPELLANT UNITED WHOLESALE MORTGAGE, LLC'S REPLY BRIEF

Andrea J. Bernard
Matthew T. Nelson
Charles R. Quigg
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
(616) 752-2000
abernard@wnj.com
mnelson@wnj.com
cquigg@wnj.com

Paul D. Hudson
Miller, Canfield, Paddock and Stone,
P.L.C.
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 454-8656
hudson@millercanfield.com

Attorneys for Defendant-Appellant          Dated: November 3, 2023

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................. 6

REPLY ARGUMENT ......................................................................... 7

    I.    Schwebke's burden of proving that UWM impliedly waived its arbitration right remains heavy ............................................................. 7

    II.    UWM's mistaken failure to raise arbitration at the earliest possible moment is not the same as an intentional waiver .................. 8

        A.    Schwebke's argument regarding UWM's delay illustrates UWM's point that this is not a paradigmatic waiver case .......... 8

        B.    UWM's participation in discovery is not inconsistent with reliance on its arbitration right .......................................... 12

        C.    UWM's other actions do not evidence an intentional waiver ....................................................................... 18

    III.    Schwebke, not UWM, advocates for a bright-line rule ...................... 21

CONCLUSION AND REQUESTED RELIEF ....................................... 23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adolph v. Coastal Auto Sales, Inc.*,
  184 Cal. App. 4th 1443 (2010) ..........................................................................11

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..........................................................................................16

*Badgerow v. Walters*,
  596 U.S. 1 (2022)......................................................................................17, 18

*Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*,
  50 F.3d 388 (7th Cir. 1995) ..............................................................................20

*Chrysler Financial Services v. Henderson*,
  No. 11CA4, 2011 WL 6927638 (Ohio Ct. App. 2011) .....................................10

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust
    Litigation*,
  790 F.3d 1112 (10th Cir. 2015) ........................................................................12

*Debois, Inc. v. Guy*,
  161 N.E.3d 99 (Ohio Ct. App. 2020)................................................................10

*Doe v. Trump Corp.*,
  453 F. Supp. 3d 634 (S.D.N.Y. 2020) ..............................................................10

*Eagle Traffic Control, Inc. v. James Julian, Inc.*,
  945 F. Supp. 834 (E.D. Pa. 1996)...................................................................9, 10

*Federation of Television & Radio Artists, AFL-CIO v. WJBK-TV
    (New World Communications of Detroit, Inc.)*,
  164 F.3d 1004 (6th Cir. 1999) ..........................................................................15

*Germany v. River Terminal Railway Co.*,
  477 F.2d 546 (6th Cir. 1973) ............................................................................13

Page(s)

*Gray Holdco, Inc. v. Cassady*,
   654 F.3d 444 (3d Cir. 2011) ................................................................20

*Hurley v. Deutsche Bank Trust Co. Americas*,
   610 F.3d 334 (6th Cir. 2010) ..............................................................14

*Johnson Associates Corp. v. HL Operating Corp.*,
   680 F.3d 713 (6th Cir. 2012) ........................................................12, 14

*Kelleher v. Dream Catcher, L.L.C.*,
   263 F. Supp. 3d 253 (D.D.C. 2017) ...............................................9, 10

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
   67 F.3d 20 (2d Cir. 1995) ................................................................9, 10

*LeBlanc v. Halliburton Co.*,
   414 F. Supp. 3d 1360 (D.N.M. 2019) .................................................13

*Life Receivables Trust v. Syndicate 102 at Lloyd's of London*,
   549 F.3d 210 (2d Cir. 2008) ...............................................................15

*Martin v. Yasuda*,
   829 F.3d 1118 (9th Cir. 2016) ............................................................12

*Miller Brewing Co. v. Fort Worth Distribution Co.*,
   781 F.2d 494 (5th Cir. 1986) ..............................................................10

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022).........................................................6, 7, 13, 14

*Reidy v. Cyberonics, Inc.*,
   No. 06-CV-249, 2007 WL 496679 (S.D. Ohio Feb. 8, 2007) ............14

*Richmond Health Facilities v. Nichols*,
   811 F.3d 192 (6th Cir. 2016) ..............................................................17

*Rugumbwa v. Betten Motor Sales*,
   136 F. Supp. 2d 729 (W.D. Mich. 2001) ............................................13

*S & H Contractors, Inc. v. A.J. Taft Coal Co.*,
   906 F.2d 1507 (11th Cir. 1990) ..........................................................10

Page(s)

*United States Army Officer Candidate School Alumni Association, Inc. v. Southern States Bank*,
No. 17-CV-139, 2018 WL 9371678 (M.D. Ga. May 21, 2018)........................10

*United States v. Olano*,
507 U.S. 725 (1993)..............................................................................................23

*Uwaydah v. Van Wert County Hospital*,
246 F. Supp. 2d 808 (N.D. Ohio 2002) ............................................................20

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*,
489 U.S. 468 (1989)..............................................................................................16

**Statutes**

9 U.S.C. § 7 ...........................................................................................................18

Mich. Comp. Laws § 691.1681............................................................................15

Mich. Comp. Laws § 691.1697............................................................................16

**Rules**

Federal Rule of Civil Procedure 34 .......................................................................13

**Other Authorities**

13 *Williston on Contracts* § 39:28 (4th ed.)............................................................8

## INTRODUCTION

Schwebke's response is most notable for what it does not do. Schwebke stridently agrees that *Morgan v. Sundance*, 596 U.S. 411 (2022), eliminated only the prejudice requirement from this Court's implied-waiver test—but then offers no meaningful response to UWM's argument that, under *Morgan*'s logic, the burden on Schwebke to establish UWM's implied waiver is as strong as it has ever been. Schwebke cherry picks facts from a mountain of cases that he suggests are similar to this one—but fails to disclose that most, if not all, of those cases involved the hallmarks of implied waiver: the movant's affirmative request for relief from the court or an equivalent signal that the party did not object to proceeding in federal court until an adverse merits decision. Schwebke accuses UWM of advocating for an improper bright-line rule—but fails to recognize that he advocates for drawing an even brighter line, under which only timeliness, not intent, matters.

Schwebke's position, if adopted, would water down the standard for implied waivers and reset the bar for such waivers in this circuit. The Court should reject Schwebke's invitation to do so. UWM respectfully submits that the Court should reverse the district court's denial of UWM's motion to compel arbitration and remand with instructions to stay the case and compel arbitration.

# REPLY ARGUMENT

## I.     Schwebke's burden of proving that UWM impliedly waived its arbitration right remains heavy.

Schwebke spends pages expressing his heated *agreement* that there is no good reason to conclude that *Morgan* altered this Court's waiver rule other than by eliminating its prejudice requirement. Schwebke Br. 10–15. Schwebke, however, offers no meaningful response to UWM's argument that his burden of proving that UWM impliedly waived its arbitration right remains heavy. Schwebke says only that *Morgan* eliminated an oft-cited reason for the heavy burden on a party claiming waiver—the previously recognized strong-federal policy in favor of arbitration. Schwebke Br. 13.

Fair enough, but Schwebke's rejoinder is no answer to UWM's explanation in its initial brief that *outside* the arbitration context, the standard for assessing whether a party impliedly waived a contract right is rigorous and the burden heavy. And, according to the Supreme Court in *Morgan*, it is that general contract standard that matters. *See Morgan*, 596 U.S. at 418 ("[A] court must hold a party to its arbitration contract just as the court would to any other kind."); *id.* at 419 (holding that the FAA imposes "a bar on using custom-made rules, to tilt the playing field in favor of (*or against*) arbitration" (emphasis added)). Outside the arbitration context, "an implied in fact waiver of a contractual right may arise *only if* the actions or conduct of the person against whom the waiver is asserted are

*inconsistent with anything other than an intention to waive the right.*" 13 *Williston on Contracts* § 39:28 (4th ed.) (emphasis added) (collecting cases). That standard mirrors this Court's requirement that a party claiming waiver show that the other party's actions are "completely inconsistent"—not just largely inconsistent or somewhat inconsistent—with reliance on its arbitration right.

A standard that requires unequivocal evidence of conduct that is completely inconsistent with the party's intention to assert its contractual right imposes a heavy burden on the party claiming waiver. Schwebke continues to face a heavy burden in seeking to show that UWM's actions are completely inconsistent with reliance on its arbitration right.

## II.    UWM's mistaken failure to raise arbitration at the earliest possible moment is not the same as an intentional waiver.

Schwebke does his best to blunt the fact that UWM engaged in the minimum of litigation while the case was active in district court. None of his arguments succeeds. A mistaken failure to raise arbitration at the earliest possible moment, like UWM's here, is not the same as an intentional waiver. This Court should not conflate the two.

### A.    Schwebke's argument regarding UWM's delay illustrates UWM's point that this is not a paradigmatic waiver case.

Schwebke asserts that UWM's failure to raise arbitration until roughly seven months after Schwebke filed his complaint and six months after UWM filed its

answer suggests that UWM waived its arbitration right. Schwebke Br. 16–19. To make his argument, he relies on a potpourri of mostly district- and state-court cases, *none* of which was decided by a court in this circuit and many of which involve longer delays than UWM's. Schwebke Br. 16–17. Schwebke's argument not only misses the mark but actually proves UWM's point.

To start, as one would expect given their provenance, the cases on which Schwebke relies were not decided under this Court's waiver precedent, and many of them apply watered-down or entirely different tests. *E.g.*, *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding waiver because the movant's "conduct has been *largely* inconsistent" with reliance on its arbitration right"; no mention of the requirement of completely inconsistent actions (emphasis added)); *Kelleher v. Dream Catcher, L.L.C.*, 263 F. Supp. 3d 253, 256 (D.D.C. 2017) (holding that forfeiture, not waiver, is the appropriate framework); *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 945 F. Supp. 834, 835 (E.D. Pa. 1996) (no mention of the requirement of completely inconsistent actions). As a result, the cases do not stand for the proposition that a delay like UWM's is so completely inconsistent with a party's arbitration rights as to amount to an intentional waiver.

Even more significant, the vast majority of the cases include the hallmarks of waiver: the party seeking arbitration's affirmative request for relief from the

court or an equivalent signal that the party did not object to proceeding in federal court until an adverse merits decision. Indeed, several of the cases involve the *plaintiff* who elected to sue in federal court—thereby clearly indicating its intent to proceed in a judicial, rather than an arbitral, forum—later seeking to compel arbitration. *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986); *United States Army Officer Candidate Sch. Alumni Ass'n, Inc. v. S. States Bank*, No. 17-CV-139 (CDL), 2018 WL 9371678, at *1 (M.D. Ga. May 21, 2018); *Debois, Inc. v. Guy*, 161 N.E.3d 99, 106 (Ohio Ct. App. 2020) (movants also sought default judgment). Others involve a defendant who removed a case to federal court—again, affirmatively opting into a judicial forum—later invoking its arbitration right. *Leadertex*, 67 F.3d at 23–24 (delay of eleven months; movant removed the case to federal court and filed counterclaims); *Kelleher*, 263 F. Supp. 3d at 255 (defendant also filed a motion to dismiss). Still others involve attempts to compel arbitration only after the moving party sought merits relief from the court in the form of a dispositive motion or otherwise faced an adverse decision. *Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 644 (S.D.N.Y. 2020) (movant filed and the court resolved a motion to dismiss before the movant sought to compel arbitration); *Eagle Traffic Control, Inc.*, 945 F. Supp. at 836; *Chrysler Fin. Servs. v. Henderson*, No. 11CA4, 2011 WL 6927638 (Ohio Ct. App. 2011) (movants sought

to enforce their arbitration rights only after the other side filed a well-supported summary judgment motion); *Adolph v. Coastal Auto Sales, Inc.*, 184 Cal. App. 4th 1443, 1451 (2010) (defendant sought to compel arbitration only after the court denied its second demurrer, i.e., motion to dismiss).

UWM doesn't dispute that even a relatively short delay may support a waiver finding when the party seeking arbitration affirmatively invokes a judicial, rather than arbitral, forum for purposes other than to compel arbitration; seeks merits relief from the court in the form of a counterclaim or dispositive motion; or seeks arbitration only after receiving an adverse merits decision from the court. But, as UWM explained in its initial brief, those facts are absent from this case.

Schwebke also says that what really matters is not delay but rather whether the party seeking arbitration substantially invoked the litigation machinery before seeking arbitration. Schwebke Br. 18. Here again, Schwebke misses the point: as the foregoing cases and this Court's precedents show, substantially invoking the litigation machinery means doing something that unquestionably, not just arguably, telegraphs the party's intent to resolve the case on the merits in court. Only then is it possible to conclude that the party's actions are tantamount to an intentional waiver. UWM did none of those things here.

Schwebke's arguments notwithstanding, the fact remains that UWM's delay is shorter than the delays in cases in which this Court has concluded a party waived

its arbitration right. Schwebke's argument, if accepted, would lower the bar for implying a waiver of arbitration rights in this circuit.

### B.    UWM's participation in discovery is not inconsistent with reliance on its arbitration right.

Schwebke makes much of the amount of discovery exchanged in this case, most of which he initiated. Schwebke Br. 19–24. To be sure, a party's participation in discovery can be consistent with the party's affirmative choice to proceed in a judicial, rather than arbitral, forum. Schwebke's problem is that participation in discovery also can be consistent with the party's reliance on or mistaken failure to raise its arbitration right. As a result, the mere fact that a party participated in discovery cannot be so completely inconsistent with the party's arbitration right as to amount to an intentional waiver of that right. And, indeed, the cases on which Schwebke relies to support his discovery-equals-waiver argument all involve a sign that the moving party attempted to manipulate the judicial process or otherwise sought affirmative relief from a court. *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (movants filed a motion to dismiss and, fourteen months into the case, told the district court they were likely "better off" in federal court); *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1116 (10th Cir. 2015) (movant sought to compel arbitration only after losing on class certification); *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718

(6th Cir. 2012) (movant filed a counterclaim); *LeBlanc v. Halliburton Co.*, 414 F. Supp. 3d 1360, 1368 (D.N.M. 2019) (movant sought to compel arbitration only after the court conditionally certified a class); *Rugumbwa v. Betten Motor Sales*, 136 F. Supp. 2d 729, 734 (W.D. Mich. 2001) (movant filed a motion for summary judgment).

Schwebke strains to discount the fact that he, not UWM, initiated the vast majority of the discovery in this case and contends that UWM's responses to his expansive discovery requests should count against UWM. Schwebke Br. 19–23. There are several problems with this argument. To begin, this Court recognized decades ago that "waiver may not be inferred from the fact that a party does not rely exclusively on the arbitration provisions of a contract, but attempts to meet all issues raised in litigation between it and another party to the agreement." *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (per curiam).

Although Schwebke asserts that this statement is meaningless, it is hard to see why. Once Schwebke propounded discovery, the Federal Rules of Civil Procedure required UWM to respond or else subject itself to sanctions from the district court. *See, e.g.*, Fed. R. Civ. P. 34(b)(2)(A). In other words, UWM's actions in responding to Schwebke's discovery requests were not voluntary, affirmative acts. And as the Supreme Court reminded in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), "[w]aiver . . . 'is the *intentional relinquishment* or abandonment of a

known right' "—i.e., a voluntary act. 596 U.S. at 417 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (emphasis added). Presumably for that reason, this Court in *Johnson Associates* focused on the movant's affirmative acts in "actively schedul[ing] and request[ing]" extensive discovery from the plaintiff. *Johnson Assocs.*, 680 F.3d at 718; *see also Reidy v. Cyberonics, Inc.*, No. 06-CV-249, 2007 WL 496679, at *7 (S.D. Ohio Feb. 8, 2007) (rejecting waiver argument based on discovery because the party opposing arbitration "initiated the majority of the discovery in this case"); *cf. Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 339 (6th Cir. 2010) (concluding that the movants took actions completely inconsistent with their arbitration right because, *inter alia*, they "not only respond-ed to actions taken by Plaintiffs, but . . . have filed multiple dispositive and non-dispositive motions of their own").

With respect to UWM's affirmative discovery, Schwebke's chief complaint is with UWM's use of third-party subpoenas, by which UWM sought to obtain Schwebke's employment and educational records and the deposition of one of his interpreters. Schwebke says that third-party subpoenas would not have been available in arbitration. Schwebke Br. 25–28. Schwebke is wrong. As an initial

matter, Schwebke contends that section 7 of the FAA, which grants[1] arbitrators the power to issue third-party subpoenas enforceable in federal court, does not authorize third-party subpoenas for prehearing document and deposition discovery. *Id.* at 25–26. There is a circuit split on that question, *e.g.*, *Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 215 (2d Cir. 2008) (describing the split), and this Court has not definitively chosen a side.[2]

Whether the FAA would authorize third-party subpoenas that may be enforced in federal court, however, is not controlling in the context of this case. Rather, as UWM explained in its initial brief, Michigan's enactment of the Uniform Arbitration Act, Mich. Comp. Laws § 691.1681 *et seq.*, provides the necessary authority. Specifically, section 17 of the Michigan Act provides, in pertinent part, that an arbitrator "may permit a deposition of any witness to be taken for use as evidence at the hearing" and may "issue subpoenas for the

---

[1] Schwebke mistakenly asserts that section 7 "narrowly restricts the arbitrator's subpoena power." Schwebke Br. 26. As discussed in greater detail below, nothing in section 7 restricts arbitrators' powers.

[2] That said, in *Federation of Television & Radio Artists, AFL-CIO v. WJBK-TV (New World Communication of Detroit, Inc.)*, 164 F.3d 1004 (6th Cir. 1999), this Court relied on case law holding that section 7 "implicitly include[s] the authority to compel the production of documents for inspection by a party prior to the hearing" to hold that section 301 of the Labor Management Relations Act of 1947 gives a labor arbitrator the same power—suggesting that the Court would reach the same conclusion in the context of the FAA. 164 F.3d at 1009.

attendance of a witness and for the production of records and other evidence at a discovery proceeding." Mich. Comp. Laws § 691.1697(2), (4). It also provides a mechanism for judicial enforcement in state court. Mich. Comp. Laws § 691.1697(1). So, separate and apart from the FAA, Michigan law authorizes third-party discovery subpoenas like those UWM used here.

Without citing any case law dealing with the Michigan statute or other states' similar laws, Schwebke summarily asserts that UWM could not rely on section 17 of the Michigan Act because the FAA preempts it. Schwebke Br. 27. Schwebke misunderstands the FAA's preemptive effect. "The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989) (citing *Bernhardt v. Polygraphic Co.*, 350 U.S. 198 (1956)). The FAA therefore preempts a state law only if the state law "actually conflicts with [the FAA]—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* at 477 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

As the Supreme Court has repeatedly recognized, Congress's objective in enacting the FAA was to "place arbitration agreements on an equal footing with other contracts" and require courts to "enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *accord Volt*, 489

16

U.S. at 478 ("The FAA was designed 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate' and to place such agreements 'upon the same footing as other contracts.' " (citations omitted)). In keeping with that policy, the Supreme Court has "described two situations in which a state rule is preempted by the FAA." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197 (6th Cir. 2016) (citing *Concepcion*, 563 U.S. at 341). First, the FAA preempts state laws that explicitly bar arbitration of certain types of claims. *Id.* (citing *Concepcion*, 563 U.S. at 341). Second, "when a 'doctrine normally thought to be generally applicable . . . is alleged to have been applied in a fashion that disfavors arbitration,' the court must determine whether the state law rule would have a 'disproportionate impact' on arbitration agreements." *Id.* (citing *Concepcion*, 563 U.S. at 341–42).

The Michigan Act's authorization of third-party discovery subpoenas plainly falls outside those buckets. It complements the FAA by providing a state law (and state court) subpoena mechanism, which often may be parties' only option given that section 7 and the FAA more generally "do not themselves support federal jurisdiction." *Badgerow v. Walters*, 596 U.S. 1, 8 (2022). And in so doing, the Michigan Act does not conflict with section 7 of the FAA. Section 7 does not purport to set the ceiling on discovery available in arbitration. Rather, it operates as a floor—a grant of power to arbitrators to issue certain subpoenas that may

subsequently be enforced in federal court. 9 U.S.C. § 7. Section 7 says nothing about state courts or state law at all; indeed, UWM is unaware of any court that has concluded that section 7 even applies in state court. *See Badgerow*, 596 U.S. at 25 (Breyer, J., dissenting) ("We have never held that [section 7 and other sections] apply in state courts . . . .").

In short, there is no basis to conclude that the FAA preempts the Michigan Act. As a result, had the case proceeded to arbitration, UWM could have sought, and likely would have received, the same run-of-the-mill employment-and-education-record subpoenas it served in the court below. UWM's use of third-party subpoenas is therefore not *completely inconsistent* with its reliance on arbitration.

## C.     UWM's other actions do not evidence an intentional waiver.

Schwebke makes an array of other assertions as he tries to gin up a case for waiver. None of his arguments succeed.

Schwebke emphasizes UWM failed to raise its arbitration right in its answer, noting that raising arbitration in an answer clearly telegraphs a party's intent to arbitrate. Schwebke Br. 24. Fair enough; both of those facts are undisputed. But Schwebke goes too far in equating UWM's failure to raise arbitration with an "affirmative" expression of its intent, as well as in suggesting that it should have significant weight in the Court's analysis. *See id.* In nearly all cases involving an alleged implied waiver by a defendant, the defendant seeking arbitration failed to

plead arbitration in its answer; otherwise, there wouldn't be a question of waiver in the first place. Accordingly, UWM's failure to raise arbitration in its answer should have only minimal impact on the Court's analysis.

Schwebke also asserts that the fact that the parties' joint discovery plan, filed roughly a month after UWM's answer, noted that the case was to be tried to a jury shows that UWM acted completely inconsistently with its arbitration right. Schwebke Br. 25. That, too, goes too far. Schwebke demanded a jury trial in his complaint. R.1, Compl. at 1, 16, PageID.1, 16. Schwebke's attempt to turn his own jury demand into some affirmative invocation by UWM makes no sense. UWM's acknowledgment of Schwebke's jury demand in the joint discovery plan is simply that.

Next, without any record citations whatsoever, Schwebke says that "UWM realized, after the close of discovery, that this case would not do well in front of a jury and sought to hide the case in arbitration" after "intentionally" holding its arbitration right in reserve. Schwebke Br. 29–30. Schwebke's assertion is pure fiction. For one thing, UWM strongly disagrees with Schwebke's citationless characterization of the facts learned in discovery; Schwebke fails to mention, for example, that discovery showed he has no economic damages.

What's more, the only evidence in the record contradicts Schwebke's assertion. As Schwebke recounts, the district court asked UWM's counsel why

UWM delayed in asserting its arbitration right. R.56, 12/1/21 Hr'g Tr. 33:24–25, PageID.2423. UWM's counsel candidly explained that counsel was unaware of the arbitration clause. *Id.* at 34:1–2, PageID.2424. No record evidence contradicts that explanation. Nor is it inherently suspect: while UWM, as an entity, had imputed knowledge of the arbitration clause, entities act through agents, and not every agent of a principal has the principal's knowledge. While Schwebke apparently does not like UWM's explanation, it is simply not true that UWM offered no explanation for its delay or intentionally delayed, as Schwebke asserts.[3]

Schwebke implies that this case is just like *Uwaydah v. Van Wert County Hospital*, 246 F. Supp. 2d 808 (N.D. Ohio 2002), a case in which the court found that the party seeking arbitration was forum shopping. Schwebke Br. 30. *Uwaydah* sharply contrasts with this case. Most important, the party seeking arbitration was *the plaintiff* who filed the lawsuit in federal court. 246 F. Supp. 2d at 813. And, after the plaintiff filed the lawsuit, he waited 18 months to assert his arbitration

---

[3] UWM's explanation, among other material differences, sets this case apart from the cases Schwebke cites. *See Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 455 (3d Cir. 2011) ("It is significant that, at least to the best of our knowledge, Gray offered no explanation to the District Court for its delay in waiting ten months after filing suit in the District Court before seeking enforcement of the arbitration provision . . . ."); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) ("Neither in its briefs nor at oral argument did Kraftmaid give any reason for its delay in filing the stay besides needing time 'to weigh its options.' That is the worst possible reason for delay.").

right, during which time he "invoked th[e] court's assistance" through "a motion to compel, discovery conferences, and in camera review of [] documents," "used discovery methods unavailable in arbitration," and received "rulings on various matters," including a dispositive motion. *Id.* at 810–11. And the plaintiff invoked arbitration only after the court ordered him to produce additional discovery and the defendant filed a motion for summary judgment. *Id.* at 810, 813.

UWM did none of those things. UWM's conduct is not so completely inconsistent with reliance on arbitration that the only reasonable conclusion is that UWM intentionally chose to resolve Schwebke's claims in court.

## III.  Schwebke, not UWM, advocates for a bright-line rule.

Schwebke asserts that UWM "asks this Court to do away with a 'totality of the circumstances' approach and to instead adopt an unnecessarily narrow, bright-line rule that a party only waives its arbitration right when the party requests affirmative relief from a court." Schwebke Br. 31. Schwebke sets up a straw man in more ways than one. To begin, Schwebke's implied assertion that this Court's waiver test is an unmoored "totality of the circumstances" test obfuscates the question before the Court. Post-*Morgan*, the question is whether the actions of the party seeking to compel arbitration are completely inconsistent with its reliance on the parties' arbitration agreement such that the only explanation is that the party knowingly and intentionally waived its right. UWM Br. 14–18; Schwebke Br. 14

("[T]he Supreme Court instructs courts to ask 'Did [the defendant] . . . knowingly relinquish the right to arbitrate by acting inconsistently with that right?' "). UWM agrees that the Court may consider all the party's actions when answering that question. Schwebke errs, however, insofar as he suggests that the "totality of the circumstances"—a phrase nowhere to be found in this Court's arbitration-waiver precedent—allows a court to evaluate more than the actions of the party seeking arbitration or to imply a waiver when the party does not act completely inconsistently with reliance on its arbitration right.

Most important, Schwebke mischaracterizes UWM's argument. UWM does not contend that this Court should adopt a bright-line rule. Nonetheless, even in contexts not amenable to bright-line rules, it is possible to identify the key factors that separate cases that fall on one side of the line from those that fall on the other. And, as the cases cited in UWM's initial brief and the mountain of cases Schwebke cites in his brief show, the paradigmatic waiver case involves something going to the merits—the waiving party's affirmative request for relief from the court, or the waiving party's invocation of its arbitration right only after the court resolves the merits against it. UWM Br. 25–27; *supra* Section II.A. That such signs are the hallmark of waiver cases is unsurprising given the rigorous standard for implied waivers by conduct. Short of some affirmative act or an obvious abuse of the judicial process, it is difficult to conclude that a party's conduct is so *completely*

22

inconsistent with reliance on its right that the *only* explanation is that it knowingly and intentionally waived its right.

Ironically, if any party is advocating for a bright-line rule, it is Schwebke. In function, if not form, Schwebke asks the Court to apply the standard of not waiver but rather forfeiture, where intent is irrelevant and all that matters is whether the party asserted his right at the earliest possible moment. *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 733 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))). That standard has never been the one used by this Court to evaluate whether a party may assert his arbitration right. The Court should not accept Schwebke's invitation to lower the bar for arbitration waivers.

## CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, and those set forth in UWM's initial brief, the Court should reverse the district court's denial of UWM's motion to compel arbitration and remand with instructions to stay the case and compel arbitration.

Dated: November 3, 2023

/s/ *Charles R. Quigg*
Charles R. Quigg

Paul D. Hudson
Miller, Canfield, Paddock and
Stone, P.L.C.
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 454-8656
hudson@millercanfield.com

Andrea J. Bernard
Matthew T. Nelson
Charles R. Quigg
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
(616) 752-2000
abernard@wnj.com
mnelson@wnj.com
cquigg@wnj.com

Attorneys for Defendant-Appellant

29436641

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply brief complies with the type-volume limitation pursuant to Fed. R. App. P. 32(a)(7)(B)(ii). The foregoing brief contains 4,405 words of Times New Roman 14-point proportional type. The word processing software used to prepare this brief was Microsoft Word for Microsoft 365 (Version 2302).

Dated: November 3, 2023          */s/ Charles R. Quigg*
                                  Charles R. Quigg

                                  Attorney for Defendant-Appellant

## CERTIFICATE OF SERVICE

This certifies that Appellant's Reply Brief was served November 3, 2023, by electronic mail using the Sixth Circuit's Electronic Case Filing system on all parties of record.

*/s/ Charles R. Quigg*
Charles R. Quigg

Attorney for Defendant-Appellant

## DESIGNATION OF RECORD

| Doc. Entry No. | Date Entered | Page ID Range | Description of Doc. |
|---|---|---|---|
| R.1 | 01/22/2021 | 16 | Complaint |
| R.56 | 08/04/2023 | 2423-2424 | 12/1/2021 Hearing Transcript |